Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Ste. 202
Salem, OR 97301
(503) 917-4409 Phone
(916) 857-6902   Facsimile

Attorneys for Plaintiff
RUTH SINCLAIR

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| RUTH SINCLAIR, An Individual,<br><br>                                  Plaintiffs,<br><br>v.<br><br>LEGACY HEALTH, A Public Benefit Corporation, and DOES 1 THROUGH 50, Inclusive,<br><br>                                  Defendants | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR RELIGIOUS AND DISABILITY DISCRIMINATION I[42 U.S.C. §§ 2000e-2 and 12112 et seq.; OR. REV. STATS. §§ 659A.030(1)(a) and 659A.112(1)] AND FOR AIDING AND ABETTING EMPLOYMENT DISCRIMINATION [OR. REV. STATS. § 659A.030(1)(g)]**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff RUTH SINCLAIR hereby alleges as follows:

## PARTIES

1.      Plaintiff is, and at all times herein was, a healthcare worker who was employed in Oregon by Defendant LEGACY HEALTH ("LEGACY") as a diagnostic medical stenographer at LEGACY's Silverton Medical Center ("Legacy-Silverton").

2.      Plaintiff also is, and at all times herein was, a practicing Christian who, as permitted under Or. Admin. R. 333-019-1010(3)-(5)(a), sought from LEGACY religious and medical exceptions from Oregon's mandate that all

_____

healthcare workers in the state be vaccinated against COVID-19 (the "Vaccine Mandate" or the "Mandate").  Not only did LEGACY deny Plaintiff the religious and medical exceptions she sought, LEGACY placed Plaintiff on unpaid administrative leave on October 1, 2021 and fired her on October 19, 2021 for declining to receive a COVID-19 vaccine on both religious and medical grounds.

3.       Defendant LEGACY is, and at all times herein was, a non-profit public benefit corporation headquartered in Portland, Oregon.  *See* Attached **Exhibit "A"** [a true and accurate copy of LEGACY's proof of registration from the Oregon Secretary of State's website].  LEGACY operates hospitals and healthcare clinics throughout northern Oregon and is, and at all times herein was, an employer within the definition of 42 U.S.C. § 2000e(b).

4.       The true names and capacities of Defendants DOES 1 THROUGH 50 (collectively the "DOES"), inclusive, are unknown to Plaintiff, who therefore sues said Defendants under such fictitious names.  Each Defendant designated herein as one of the DOES is legally responsible for the events and happenings herein referred to and proximately caused injuries and damages to Plaintiff thereby, as herein alleged.  Plaintiff will seek leave of this Court to amend this Complaint to show the DOES' names and capacities once they have been ascertained.

## JURISDICTION

5.       Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

6.       This Court has jurisdiction over Defendant LEGACY pursuant to 28 U.S.C. § 1331 because Plaintiff's action arises under the laws of the United States.

7.       This Court has supplemental jurisdiction over the state law claim(s) asserted herein pursuant to 28 U.S.C. § 1367(a) in that such claims are related to and form part of the same case and controversy as Plaintiff's federal claims.

## VENUE

8.  Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

9.  Venue is proper in the Court's Portland Division because LEGACY is headquartered in Multnomah County, the events giving rise to this Complaint occurred in Multnomah County, and all agents, employees, or other persons working for, or in concert with, LEGACY with regard to the events giving rise to this case are located in, employed in, and/or residents of Multnomah County.

## GENERAL ALLEGATIONS

10.  Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

11.  In August 2021, approximately 18 months after the first-known cases of COVID-19 were discovered in Oregon, pursuant to an executive order from Oregon's then-governor, Kate Brown, the Oregon Health Authority ("OHA") sought to limit the spread of COVID-19 in the state's healthcare facilities by issuing an executive order (the "Vaccine Mandate" or the "Mandate") requiring healthcare workers statewide to be vaccinated against COVID-19 by October 1, 2021.  *See* Or. Admin. R. 333-019-1010(1).  However, the Mandate allowed healthcare workers to seek, and the healthcare providers who employed them to grant, exemptions from the vaccination requirement.  *Id.*, subsections (3)-(4).

12.  The OHA's Vaccine Mandate also made clear that the Mandate did not prohibit healthcare employers from complying with the requirements of federal and state laws that prohibit employers from discriminating against employees on the basis of religion.  *See* Or. Admin. R. 333-019-1010(5)(a).

13.  In accordance with the OHA's Mandate, LEGACY required all of its employees to be vaccinated against COVID-19 by September 30, 2021.

14.     LEGACY allowed its employees to seek religious and medical exceptions from the Vaccine Mandate.  Employees who sought religious and/or medical exceptions had to fill out and submit a form provided by LEGACY.

15.     Employees seeking religious exceptions also had to submit along with the form a letter from a religious authority in the employee's faith community explaining, on the religious authority's letterhead, "how administration of the COVID-19 vaccine conflicts with bona fide religious tenets or practices of [the employee's] faith."  LEGACY also permitted employees who had no religious authority to provide a letter on their own behalf explaining their religious objections to receive a COVID-19 vaccine.

16.     Religious and medical exception requests submitted by LEGACY employees would be judged by an "exception work group" (the "Exception Committee" or the "Committee") that included staff from LEGACY's Spiritual Care, Ethics, Primary Care, and Infection Prevention and Control departments.

17.     Plaintiff is, and at all times relevant herein was, a practicing Christian whom LEGACY employed as a diagnostic imaging stenographer at Legacy-Silverton for roughly 5½ years, from April 2016 until October 19, 2021.

18.     Plaintiff was qualified for her position and had an exemplary employment record.

19.     Plaintiff has had allergic reactions to influenza and tetanus vaccines in the past.  Plaintiff's physician believes, and at all times relevant herein believed, Plaintiff is allergic to a preservative in both vaccines, which was also present in COVID-19 vaccines.

20.     Due to the risk that the preservative in the vaccine would cause anaphylaxis – a severe, life-threatening allergic reaction – in Plaintiff's body, on August 23, 2021, Plaintiff requested a medical exception from the Vaccine Mandate, providing to LEGACY a letter from her physician in support of her

_____

request.  True and accurate copies of the medical exception request and the letter from her physician are attached hereto as **Exhibit "B."**

21.     Although Plaintiff also holds, and at all times relevant herein held, sincere religious objections to receiving a COVID-19 vaccine, Plaintiff initially sought only a medical exception from the Vaccine Mandate: Reasonably believing she would qualify for a medical exception due to the inherent risk to her life that taking a COVID-19 vaccine presented, Plaintiff felt it was unnecessary to seek a religious exception in addition to a medical exception.

22.     On September 23, 2021, LEGACY denied Plaintiff's medical exception request.  *See* Attached **Exhibit "C"** [a true and accurate copy of an e-mail from LEGACY notifying Plaintiff that her religious exception request had been denied].

23.     On September 26, 2023, Plaintiff attempted to appeal LEGACY's denial of her medical exception.  She coupled her appeal with a request for a religious exception.  *See* Attached **Exhibit "D"** [a true and accurate copy of Plaintiff's appeal of LEGACY's denial of her medical exception request, including a true and accurate copy of her request for a religious exception].

24.     Plaintiff sought a religious exception based on two sincere religious beliefs that she holds, and at all times relevant herein held [*see* Ex. "D"]:

      a. First, she believes her body to be a temple of the Holy Spirit, which she is to protect from defilement in accordance with 1 Corinthians 3:16-17 and 6:19-20, Acts 17:24, and Mark 12:17; and

      b. Second, Plaintiff believes, according to the Bible, that life begins at conception and that, accordingly, abortion is murder.   Because COVID-19 vaccine manufacturers used cells from aborted babies in the testing, development, and production of the vaccines, Plaintiff good not, in good conscience, receive a COVID-19

vaccine, as doing so would essentially support the murder of the
unborn, which the Bible prohibits.

25.     Aware of employees' concerns about the use of tissue from aborted
babies in the preparation of COVID-19 vaccines, LEGACY acknowledged on its
website that the three manufacturers of COVID-19 vaccines then available in the
United States – Pfizer, Moderna, and Johnson & Johnson – all used cells from
aborted babies in developing their respective vaccines.  *See* Attached **Exhibit "E"**
[a true and accurate copy of the relevant page from LEGACY's website].

26.     LEGACY attempted to justify those manufacturers' actions by
asserting that (1) "[f]etal cells that are used are not from recent abortions.  They
come from fetal cells from the 1970s and 1980s" and (2) "all fetal cells are
removed from the vaccine before" the vaccine is administered.  *See* Ex. "E."

27.     Because Plaintiff did not receive a COVID-19 vaccine by September
30, 2021, LEGACY placed Plaintiff on unpaid leave on October 1, 2021.

28.     On October 13, 2021, LEGACY informed Plaintiff via e-mail that
both her medical exception request and her religious exception request had been
denied.  A true and accurate copy of that e-mail is attached hereto as **Exhibit "F."**

29.     In its e-mail denying Plaintiff's religious and medical exception
requests, LEGACY gave Plaintiff three choices [see Ex. "F"]:

    a.  Provide to LEGACY proof that she had begun the process of
        receiving a COVID-19 vaccine – which, depending on the
        manufacurer, consisted of either a single shot (Johnson & Johnson)
        or two shots roughly three weeks apart (Pfizer and Moderna) – by
        October 1, 2021, and thereby remain employed;

    b.  Resign from her position; or

    c.  Remain unvaccinated and be placed on unpaid leave, with
        termination of her employment to follow on October 19, 2021.

30.    Because she could not, in good conscience, receive a COVID-19 vaccine given her sincere religious objection to taking vaccines connected to abortion and the potential endangerment of her own life, and given the likelihood that she would be unable to obtain unemployment benefits if she resigned from her position, Plaintiff reluctantly, and under protest, chose the third option.  LEGACY thus placed Plaintiff on administrative leave and subsequently fired her.

31.    LEGACY denied Plaintiff religious and medical exceptions despite the availability of reasonable accommodations that would have allowed Plaintiff to continue working while greatly limiting the likelihood that Plaintiff would contract COVID-19 from, or transmit the virus to, LEGACY's other employees or patients. Such accommodations included requiring Plaintiff to:

   a.   Wear power air purifying respirators, N95 or surgical masks, clean hospital-provided gowns or scrubs, hair covers, goggles, gloves, and/or shoe covers;

   b.   Submit to weekly COVID-19 testing, temperature checks, and screening questions;

   c.   Wash and/or sanitize their hands regularly; and

   d.   Engage in social distancing (six feet or more) from patients and fellow employees when possible.

32.    LEGACY, in fact, employed many of these measures for its employees both before and after the OHA implemented its Vaccine Mandate – an indicator that LEGACY could have provided reasonable accommodations to Plaintiff without incurring significant difficulty or expense.

33.    LEGACY predestined Plaintiff for unpaid leave and termination and did so not based on an individualized assessment of Plaintiff's religious and medical exception requests, but as part of an effort to purge people of faith from

LEGACY's hospitals.  LEGACY's Exception Committee paid little to no attention to how much or how little detail employees who sought religious exemptions included in their exemption requests – the Committee simply denied exemption requests across the board, with few, if any, exceptions.

34.     Since LEGACY terminated Plaintiff's employment, Plaintiff has suffered the following economic damages:

   a. **Salary:** $3,700 per month ($89,000 total thus far, and counting);

   b. **Retirement benefits:** $4,000 that would have been paid at the end of 2021;

   c. **Health insurance:** Free benefits for herself; additional coverage for family members for a small fee – Plaintiff now has to pay a much higher premium for medical insurance.

35.     Since LEGACY terminated Plaintiff's employment, Plaintiff has mitigated her damages by accepting a job that pays an hourly wage close to what she made at LEGACY ($47.25 per hour, compared to $47.59 per hour at LEGACY).  However, Plaintiff works fewer hours (20 per week, as opposed to $36 per week at LEGACY), meaning she earns far less despite occasionally supplementing her income with work at another facility.  Plaintiff also earns retirement benefits equivalent to 3% of her base salary, whereas she earned retirement benefits at a rate of 5% of her base salary with LEGACY.

36.     Due to LEGACY's termination of her employment and difficulty in obtaining comparable employment with another employer, Plaintiff has suffered emotional distress not only from losing her job, but from related worries about finances and lost retirement benefits.

37.     As a condition of filing the herein lawsuit, Plaintiff has obtained a right-to-sue letter from Oregon's Bureau of Labor & Industries ("BOLI").  A true and accurate copy of that letter is attached hereto as **Exhibit "G."**

38.    The Court should note that when reviewing Plaintiff's case, BOLI found substantial evidence of discrimination on OHSU's part.  *See* Ex. "G."

39.    Attached hereto as **Exhibit "H"** is a printout from the website TimeandDate.com showing when the 90-day statute of limitations set forth in each right-to-sue letter is set to expire.  Plaintiff included this printout to show that she timely filed this lawsuit in compliance with the deadline set forth in her letter.

<u>**FIRST CAUSE OF ACTION:**</u>
**Violation of Title VII – Failure to Accommodate Religious Beliefs**
**[42 U.S.C. § 2000e-2]**
**Against Defendant LEGACY**

40.    Plaintiff refers to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

41.    Title VII of the 1964 Civil Rights Act prohibits employers from discriminating on the basis of religion.  42 U.S.C. § 2000e-2(a)(1).

42.    For purposes of Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year …"  42 U.S.C. § 2000e(b).

43.    Defendant LEGACY qualifies as an employer under Title VII.

44.    The term "religion," for purposes of Title VII, "includes all aspects of religious observance and practice, as well as belief …" 42 U.S.C. § 2000e(j).

45.    As a practicing Christian, Plaintiff belongs to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a)(1).

46.    Plaintiff has a sincere religious belief that she cannot defile her body by taking into her body a vaccine derived from the cells of babies whose lives were taken via abortion or whose manufacturer used cells from aborted babies in the research, testing, and development of the vaccine.  *See* Ex. "D."

47.    Plaintiff's sincere religious belief against taking vaccines whose manufacturers used cells from aborted babies in researching and developing the vaccines conflicted with her employment-related duty to receive a COVID-19 vaccine, as the COVID-19 vaccines available on the market in 2021 were all made by manufacturers who used cells from aborted babies in the vaccines' testing and development.  *See* Exs. "D" and "E."

48.    Plaintiff informed her employer, Defendant LEGACY, of the conflict between her religious beliefs concerning abortion and her employment-related duty to receive a COVID-19 vaccine.  *See* Ex. "D."

49.    Defendant LEGACY subjected Plaintiff to discriminatory treatment by subjecting her to three adverse employment actions:

      a.  Threatening to place her on unpaid leave and ultimately terminate her employment if she did not receive a vaccine [*see* Ex. "F"];

      b.  Placing her on unpaid leave on October 1, 2021; and

      c.  Terminating her employment on October 19, 2021.

50.    Defendant LEGACY made no attempt to accommodate Plaintiff's sincerely held religious beliefs, nor did LEGACY assert to Plaintiff that LEGACY would incur undue hardship by accommodating her beliefs.  LEGACY simply attempted to justify its denials of Plaintiff's religious exemption requests by asserting that the Exception Committee did not find Plaintiff's asserted beliefs to be sincere, even though Plaintiff provided the Committee evidence to the contrary.

51.    Defendant LEGACY offered Plaintiff no religious accommodations even though reasonable accommodations were available that would have allowed Plaintiff to continue working while serving LEGACY's interest in significantly limiting the likelihood that its employees would contract and spread COVID-19 to their co-workers or to LEGACY's patients.

52.     Defendant LEGACY would not have incurred substantial increased costs or any other undue hardship by accommodating Plaintiff's religious beliefs. Instead, Defendant LEGACY threatened to place Plaintiff on unpaid leave and subsequently fire her, then followed through on those threats.

53.     Animus toward Plaintiff's religious beliefs is truly what motivated Defendant LEGACY to fire Plaintiff, any assertion LEGACY might make to the contrary notwithstanding.

54.     Attempting to comply with the OHA's Mandate is no excuse: The Mandate expressly allowed LEGACY to grant religious exemptions to its employees and made clear that the Mandate did not prohibit LEGACY from complying with Title VII.  See Or. Admin. R. 333-019-1010(3)-(5)(a).

55.     Based on the foregoing, Defendant LEGACY has discriminated against Plaintiff in violation of Title VII.

## SECOND CAUSE OF ACTION:
### Violation of State Law Prohibiting Religious Discrimination
### [ORS 659A.030(1)(a)]
### Against Defendant LEGACY

56.     Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

57.     Like Title VII, ORS 659A.030(1)(a) prohibits employers from discharging individuals from employment on the basis of religion.

58.     Because Oregon's state law prohibiting employers from discriminating on the basis of religion is modeled after Title VII, and because the analysis for religious discrimination claims under both statutes is identical [*see Hedum v. Starbucks Corp.*, 546 F. Supp. 2d 1017, 1022 (D. Or. 2008)], Plaintiff declines to restate the facts as set forth in her first cause of action, as those facts are already incorporated as though fully set forth herein.

59.     Under 42 U.S.C. § 2000e-7, nothing in 42 U.S.C. § 1981a(b)(3), which caps the amount of non-pecuniary and punitive damages that can be awarded to Plaintiff, "shall be deemed to exempt or relieve any person from liability, duty, penalty, or punishment provided by any present or future law of any State[.]"  In other words, an Oregon jury is free to exceed any applicable federal dollar limit in accordance with Oregon law.

60.     Under Oregon law, a jury may award up to $500,000 in noneconomic damages.  *See* ORS 31.710(1).  Oregon law defines "noneconomic damages" to include "subjective, nonmonetary losses, including but not limited to … mental suffering, emotional distress, … inconvenience and interference with normal and usual activities apart from gainful employment."  ORS 31.705(2)(b).

61.     As stated *supra*, Plaintiff has endured mental suffering and emotional distress due to LEGACY's unlawful discrimination against her.

62.     ORS 659A.885(3) allows for punitive damages against employers such as Defendant LEGACY who violate ORS 659A.030(1)(a).  Oregon law places no cap on punitive damages.

63.     Based on the foregoing, in addition to violating Title VII, Defendant LEGACY has violated ORS 659A.030(1)(a).

### THIRD CAUSE OF ACTION:
### Violation of Americans With Disabilities Act
### [42 U.S.C. § 12112(a)]
### Against Defendant LEGACY

64.     Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

65.     The Americans with Disabilities Act ("ADA") prohibits employers from discriminating against qualified individuals on the basis of disability with regard to terms, conditions, and privileges of employment.  42 U.S.C. § 12112(a).

66.    As someone who suffers from allergic reactions to a preservative frequently used in various vaccines, Plaintiff has a disability as defined by 42 U.S.C. § 12102(1)(A) ["A physical or mental impairment that substantially limits one or more major life activities of such individual"].  Plaintiff also has a record of her impairment, as indicated by the letter from her physician that she submitted to Defendant LEGACY as part of her request for a medical exemption, thereby meeting the requirements of 42 U.S.C. § 12102(1)(B).  *See* Ex. "B."

67.    Plaintiff was qualified to work in her position and could perform all essential functions required of her in that position.

68.    Plaintiff suffered adverse employment action due to her disability: Defendant LEGACY fired Plaintiff because Plaintiff could not receive a COVID-19 due to the life-endangering risks COVID-19 vaccines presented.

69.    Defendant LEGACY could and should have offered Plaintiff a reasonable accommodation for her disability.  LEGACY did not do so, opting instead to subject Plaintiff to discriminatory treatment by subjecting her to three adverse employment actions:

      a.  Threatening to place her on unpaid leave and ultimately terminate her employment if she did not receive a vaccine [*see* Ex. "F"];

      b.  Placing her on unpaid leave on October 1, 2021; and

      c.  Terminating her employment on October 19, 2021.

70.    Animus toward Plaintiff's disability is truly what motivated Defendant LEGACY to fire Plaintiff, any assertion Legacy might make to the contrary notwithstanding.

71.    Defendant LEGACY's actions were inconsistent with the OHA's Vaccine Mandate, which expressly allowed LEGACY to grant medical exemptions in compliance with the ADA.  *See* Or. Admin. R. 333-019-1010(5)(a).

72.     Based on the foregoing, LEGACY has violated the ADA.

## FOURTH CAUSE OF ACTION:
### Violation of State Law Prohibiting Disability Discrimination
### [ORS 659A.112(1)]
### Against Defendant LEGACY

73.     Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

74.     Like the ADA, Oregon law prohibits employers from discriminating against qualified individuals on the basis of disability with regard to the terms, conditions, and privileges of employment.  ORS 659A.112(1).

75.     Because Defendant LEGACY employs, and at all times relevant herein employed, more than six persons, LEGACY is an employer to whom ORS 659A.112(1) applies.  *See* ORS 659A.106.

76.     As someone who suffers from allergic reactions to various vaccines, Plaintiff has a disability as defined by ORS 659A.104(1)(a) ["A physical or mental impairment that substantially limits one or more major life activities of such individual"].  Plaintiff also has a record of her impairment, as indicated by the letter from her physician that she submitted to Defendant LEGACY as part of her request for a medical exemption from receiving a COVID-19 vaccination, thereby meeting the requirements of ORS 659A.104(1)(b).  *See* Ex. "B."

77.     Plaintiff was qualified to work as a diagnostic imaging stenographer for Defendant LEGACY and could perform all essential functions required of her in that position.

78.     Defendant LEGACY subjected Plaintiff to multiple adverse employment actions due to her disability:

      a.  Threatening to place her on unpaid leave and ultimately terminate her employment if she did not receive a vaccine [*see* Ex. "F"];

      b.  Placing her on unpaid leave on October 1, 2021; and

      c.  Terminating her employment on October 19, 2021.

    79.   Defendant LEGACY could and should have offered Plaintiff reasonable accommodationx for her disability that would not have required LEGACY to incur significant difficulty or expense.  LEGACY did not do so, opting to terminate her employment instead.

    80.   Animus toward Plaintiff's disability is truly what motivated Defendant LEGACY to fire Plaintiff, any assertion LEGACY might make to the contrary notwithstanding.

    81.   Defendant LEGACY's actions were inconsistent with the Vaccine Mandate, which expressly allowed LEGACY to grant medical exemptions in compliance with state laws prohibiting disability-based discrimination.  *See* Or. Admin. R. 333-019-1010(5)(a).  See Or. Admin. R. 333-019-1010(5)(a)

    82.   ORS 659A.885(3) allows for punitive damages against employers such as Defendant LEGACY who violate ORS 659A.112(1).  Oregon law places no cap on punitive damages.

    83.   Defendant LEGACY's conduct was especially egregious given that LEGACY essentially forced Plaintiff to choose between her job and her life due to Plaintiff's risk of a life-threatening allergic reaction to COVID-19 vaccines.

    84.   Based on the foregoing, Defendant LEGACY has violated ORS 659A.112(1).

### FIFTH CAUSE OF ACTION:
### Aiding and Abetting Religious Discrimination
### [ORS 659A.030(1)(g)]

    85.   Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

86.    ORS 659A.030(1)(g) prohibits any person from aiding and abetting an employer from engaging in employment discrimination.

87.    In their roles as members of Defendant LEGACY's Exceptions Committee, Defendants DOES 1 THROUGH 50 (the "DOES") – whose identities have yet to be determined, and whom Plaintiff intends to add as Defendants after learning their identities through discovery – acted in concert with, or gave substantial assistance to, LEGACY in unlawfully discriminating against Plaintiff on account of her religion and her disability.

88.    The DOES gave substantial assistance to LEGACY's discrimination against Plaintiff knowing it was unlawful for LEGACY, as Plaintiff's employer, to discriminate against Plaintiff on the basis of her religion and her disability.

89.    Because Defendant LEGACY carried out its religious discrimination against Plaintiff with the assistance of the DOES, the Court should hold the DOES individually and personally liable for their conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants LEGACY and DOES 1 THROUGH 50 as follows:

### **ON ALL CAUSES OF ACTION:**

1.    For economic damages in an amount according to proof at trial;

2.    For non-economic damages in an amount according to proof at trial;

3.    For punitive damages in an amount according to proof at trial;

4.    For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

5.    For such other and further relief as the Court may deem proper.

Dated: October 2, 2023                    PACIFIC JUSTICE INSTITUTE
                                          __/s/ *RAY D. HACKE*_____
                                          Ray D. Hacke
                                          Attorney for Plaintiff
                                          RUTH SINCLAIR

# EXHIBIT "A"



OREGON SECRETARY OF STATE
**Corporation Division**

HOME

Business Xpress | business name search | oregon business guide
license directory | business registry/renewal | forms/fees | notary public
uniform commercial code | uniform commercial code search | documents & data services

### Business Name Search

New Search    Printer Friendly    Business Entity Data    **10-31-2022 14:31**

| Registry Nbr | Entity Type | Entity Status | Jurisdiction | Registry Date | Next Renewal Date | Renewal Due? |
|---|---|---|---|---|---|---|
| 091184-15 | DNP | ACT | OREGON | 11-04-1970 | 11-04-2022 | **YES** |
| Entity Name | LEGACY HEALTH | | | | | |
| Foreign Name | | | | | | |
| Non Profit Type | PUBLIC BENEFIT | | | | | |

**Online Renewal:**

[ Renew Online ]

Click here to generate and print an annual report.

New Search    Printer Friendly    Associated Names

| Type | PPB | PRINCIPAL PLACE OF BUSINESS | | |
|---|---|---|---|---|
| Addr 1 | LEGAL SERVICES DEPARTMENT | | | |
| Addr 2 | 1919 NW LOVEJOY STREET | | | |
| CSZ | PORTLAND | OR | 97209 | Country | UNITED STATES OF AMERICA |

*Please click here for general information about registered agents and service of process.*

| Type | AGT | REGISTERED AGENT | Start Date | 09-17-2021 | Resign Date |
|---|---|---|---|---|---|
| Name | ALEXANDER | | GLADNEY | | |
| Addr 1 | 1919 NW LOVEJOY ST | | | | |
| Addr 2 | | | | | |
| CSZ | PORTLAND | OR | 97209 | Country | UNITED STATES OF AMERICA |

| Type | MAL | MAILING ADDRESS | |
|---|---|---|---|
| Addr 1 | 1919 NW LOVEJOY | | |
| Addr 2 | | | |
| CSZ | PORTLAND | OR | 97209 | Country | UNITED STATES OF AMERICA |

| Type | PRE | PRESIDENT | | Resign Date |
|---|---|---|---|---|
| Name | KATHRYN | | CORREIA | |

| Addr 1 | 1919 NW LOVEJOY ST | | | | | |
|--------|-----|--|--|--|--|--|
| Addr 2 | | | | | | |
| CSZ | PORTLAND | OR | 97209 | | Country | UNITED STATES OF AMERICA |

| Type | SEC | SECRETARY | | | | Resign Date | |
|------|-----|-----------|--|--|--|-------------|--|
| Name | ALEXANDER | | GLADNEY | | | | |
| Addr 1 | LEGAL SERVICES DEPARTMENT | | | | | | |
| Addr 2 | 1919 NW LOVEJOY | | | | | | |
| CSZ | PORTLAND | OR | 97209 | | Country | UNITED STATES OF AMERICA | |

**New Search**    **Printer Friendly**    Name History

| Business Entity Name | Name Type | Name Status | Start Date | End Date |
|----------------------|-----------|-------------|------------|----------|
| LEGACY HEALTH | EN | CUR | 04-05-2010 | |
| LEGACY HEALTH SYSTEM | EN | PRE | 03-31-1989 | 04-05-2010 |
| HEALTHLINK | EN | PRE | 10-11-1985 | 03-31-1989 |
| METROPOLITAN HOSPITALS, INC. | EN | PRE | 05-19-1971 | 10-11-1985 |
| SOUTHWEST HOSPITAL | EN | PRE | 11-04-1970 | 05-19-1971 |

Please read before ordering Copies.

**New Search**    **Printer Friendly**    Summary History

| Image Available | Action | Transaction Date | Effective Date | Status | Name/Agent Change | Dissolved By |
|-----------------|--------|------------------|----------------|--------|-------------------|--------------|
| | AMENDED ANNUAL REPORT | 09-17-2021 | | FI | Agent | |
| | AMENDED ANNUAL REPORT | 10-28-2020 | | FI | Agent | |
| | RESTATED ARTICLES | 01-31-2020 | | FI | | |
| | RESTATED ARTICLES | 01-31-2020 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-25-2019 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-13-2018 | | FI | | |
| | RESTATED ARTICLES | 12-18-2017 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-15-2017 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-21-2016 | | FI | | |
| | RESTATED ARTICLES | 09-19-2016 | | FI | | |
| | RESTATED ARTICLES | 05-31-2016 | 06-01-2016 | FI | | |
| | AMENDED ANNUAL REPORT | 10-05-2015 | | FI | | |
| | AMENDED ANNUAL REPORT | 10-13-2014 | | FI | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | RESTATED ARTICLES | 04-18-2014 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-16-2013 | | FI | | |
| | CHANGE OF REGISTERED AGENT/ADDRESS | 09-11-2013 | | FI | Agent | |
| | REINSTATEMENT AMENDED | 03-14-2013 | | FI | | |
| | ADMINISTRATIVE DISSOLUTION | 01-04-2013 | | SYS | | |
| | AMENDED ANNUAL REPORT | 10-25-2011 | | FI | | |
| | AMENDED ANNUAL REPORT | 10-21-2010 | | FI | | |
| | RESTATED ARTICLES | 04-05-2010 | | FI | | |
| | ARTICLES OF AMENDMENT | 04-05-2010 | | FI | Name | |
| | AMENDED ANNUAL REPORT | 11-03-2009 | | FI | | |
| | AMENDED ANNUAL REPORT | 10-29-2008 | | FI | | |
| | AMENDED ANNUAL REPORT | 11-07-2007 | | FI | | |
| | RESTATED ARTICLES | 10-30-2007 | | FI | | |
| | AMENDED ANNUAL REPORT | 10-20-2006 | | FI | | |
| | ANNUAL REPORT | 01-04-2006 | | FI | | |
| | RESTATED ARTICLES | 05-05-2005 | | FI | | |
| | REINSTATEMENT AMENDED | 01-27-2005 | | FI | | |
| | ADMINISTRATIVE DISSOLUTION | 12-30-2004 | | SYS | | |
| | RESTATED ARTICLES | 12-10-2003 | | FI | | |
| | ANNUAL REPORT PAYMENT | 12-10-2003 | 12-09-2003 | SYS | | |
| | ANNUAL REPORT PAYMENT | 10-17-2002 | | SYS | | |
| | ANNUAL REPORT PAYMENT | 11-02-2001 | | SYS | | |
| | STRAIGHT RENEWAL | 11-20-2000 | | FI | | |
| | NB AMENDMENT | 11-14-2000 | | FI | | |
| | AMENDED RENEWAL | 12-29-1999 | | FI | | |
| | NB AMENDMENT | 01-28-1999 | | FI | | |
| | CHANGED RENEWAL | 11-06-1998 | | FI | | |
| | AGENT/AUTH REP CHNG | 11-06-1998 | | FI | | |
| | STRAIGHT RENEWAL | 10-27-1998 | | FI | | |
| | NB AMENDMENT | 06-24-1998 | | FI | | |

| | | | | |
|---|---|---|---|---|
| MERGER | 04-16-1998 | | FI | |
| NB AMENDMENT | 04-03-1998 | | FI | |
| AGENT/AUTH REP CHNG | 01-30-1998 | | FI | |
| STRAIGHT RENEWAL | 10-24-1997 | | FI | |
| NB AMENDMENT | 02-28-1997 | | FI | |
| STRAIGHT RENEWAL | 12-18-1996 | | FI | |
| STRAIGHT RENEWAL | 11-03-1995 | | FI | |
| NB AMENDMENT | 06-02-1995 | | FI | |
| ASSOCIATED NAME CHNG | 06-02-1995 | | FI | |
| STRAIGHT RENEWAL | 10-10-1994 | | FI | |
| NB AMENDMENT | 12-30-1993 | | FI | |
| AMENDED RENEWAL | 09-27-1993 | | FI | |
| MERGER | 04-06-1993 | | FI | |
| AMENDED RENEWAL | 10-09-1992 | | FI | |
| NB AMENDMENT | 10-07-1992 | | FI | |
| ASSOCIATED NAME CHNG | 10-07-1992 | | FI | |
| AGENT/AUTH REP CHNG | 06-26-1992 | | FI | |
| NB AMENDMENT | 06-16-1992 | | FI | |
| ASSOCIATED NAME CHNG | 06-16-1992 | | FI | |
| AMENDED RENEWAL | 09-26-1991 | | FI | |
| NB AMENDMENT | 03-25-1991 | | FI | |
| NB AMENDMENT | 02-06-1991 | | FI | |
| MERGER | 12-21-1990 | | FI | |
| AGENT/AUTH REP CHNG | 10-29-1990 | | FI | |
| AMENDED RENEWAL | 10-29-1990 | | FI | |
| NB AMENDMENT | 12-22-1989 | | FI | |
| AMENDED RENEWAL | 11-01-1989 | | FI | |
| CORRECTION OF ANNUAL | 05-11-1989 | | FI | |
| NB AMENDMENT | 04-12-1989 | | FI | |
| MERGER | 03-31-1989 | | FI | |
| ENTITY NAME CHANGE | 03-31-1989 | | FI | |
| ASSOCIATED NAME CHNG | 03-31-1989 | | FI | |
| NB AMENDMENT | 03-31-1989 | | FI | |
| NB AMENDMENT | 01-26-1989 | | FI | |
| AMENDED RENEWAL | 10-20-1988 | | FI | |
| AMENDED RENEWAL | 11-09-1987 | | FI | |
| ASSOCIATED NAME | 10-19-1987 | | FI | |

| | | | | | |
|---|---|---|---|---|---|
| | CHNG | | | | |
| | NB AMENDMENT | 04-09-1987 | | FI | |
| | STRAIGHT RENEWAL | 10-08-1986 | | FI | |
| | ASSOCIATED NAME CHNG | 04-02-1986 | | FI | |
| | STRAIGHT RENEWAL | 11-21-1985 | | FI | |
| | RESTATED ARTICLES | 10-11-1985 | | FI | |
| | ENTITY NAME CHANGE | 10-11-1985 | | FI | |
| | NC AMENDMENT | 09-30-1985 | | FI | |
| | STRAIGHT RENEWAL | 11-29-1984 | | FI | |
| | NC AMENDMENT | 11-16-1984 | | FI | |
| | NC AMENDMENT | 09-10-1984 | | FI | |
| | RESTATED ARTICLES | 05-05-1983 | | FI | |
| | AMENDMENT | 03-21-1975 | | FI | |
| | AMENDMENT | 01-08-1973 | | FI | |
| | AMENDMENT | 05-19-1971 | | FI | |
| | ENTITY NAME CHANGE | 05-19-1971 | | FI | |
| | NEW | 11-04-1970 | | FI | |

About Us | Announcements | Laws & Rules | Feedback Policy | SOS Home | Oregon Blue Book | Oregon.gov

For comments or suggestions regarding the operation of this site, please contact : corporation.division@sos.oregon.gov

© 2022  Oregon Secretary of State.  All Rights Reserved.

# EXHIBIT "B"

Last updated: 8/11/21

 **LEGACY** H E A L T H

## COVID-19 VACCINATION EXEMPTION REQUEST FORM

**INSTRUCTIONS:** Please complete this form for the applicable exemption you are seeking. If you have questions, please contact the Employee Health COVID Hotline at 503-415-5820 or COVID19@lhs.org.

Name: Ruth Sinclair                     Employee #: 4704

Phone Number: (503) 385-6864   Email: _____

Department: Imaging                     Site: WS

Employee Signature: Ruth Sinclair       Date: 8/22/21

Legacy Health requires COVID-19 vaccination sufficient to achieve a fully vaccinated status for all caregivers. Legacy Health recognizes that immunization with a safe and effective vaccine is a proven strategy to reduce COVID-19 related illness for our caregivers, patients, and community. The CDC recognizes that COVID-19 vaccines are safe and effective at preventing COVID-19 disease, especially severe illness, and death.

### ☑ Medical Exemption

Please underline attach a signed letter from your qualified medical provider, on that medical provider's letterhead, that states the medical condition they are treating and describes a valid medical contraindication per the CDC. Please ensure that the medical provider who provides the signed letter is qualified to medically assess the condition at issue.

**Contact information for Provider:**

Provider Name (printed) Eva McCarthy MD   Telephone: (503) 769-2259

### ☐ Bona fide Religious Exemption

Please attach a signed letter from a religious authority in your faith community, on that religious authority's letterhead, explaining how administration of the COVID-19 vaccine conflicts with bona fide religious tenets or practices of your faith. (Please ensure the information in the letter is specific. A general philosophical or moral objection to the vaccine will not be sufficient for Legacy Health to evaluate the request or grant an exemption.)

**Contact information for Religious Leader:**

Religious Leader Name (printed)_____   Telephone: _____

Position/Title: _____

Either email this form and required letter to COVID19@lhs.org, fax to 503-415-5192 or submit to the local Employee Health office.

Sublimity Medical Clinic • 114 SE Church St, SUBLIMITY OR 97385-9714

## SINCLAIR, RUTH D (id #161505, dob: 11/17/1986)



**SANTIAM HOSPITAL**
embrace HEALTH™

embrace **TRUST**
**SUBLIMITY MEDICAL CLINIC**
*Part of Santiam Hospital*

Sinclair, Ruth D
**Address:** 7132 Peter Rd SE Aumsville OR 97325-9590

**DOB:** 11/17/1986
**Patient ID:** 161505

**Date:** 08/13/2021

To Whom it May Concern,

This patient has had an allergic reaction to both the influenza and tetanus vaccines. This is a suspected perservative allergy contained within the vaccine that is also present in the COVID vaccines. For this reason, this patient qualifies for a medical exeption from requiring the COVID vaccine due to her risk of anaphylaxis from the vaccine. This letter serves as her medical exemption letter. If you have questions or concerns, please contact the clinic at 503-769-2259.

Sincerely,

Electronically Signed by: EVA MCCARTHY, DO

Sublimity Medical Clinic

Sinclair, Ruth D (ID: 161505). DOB: 11/17/1986


# FAQs – COVID-19 Vaccine Requirement Policy
Updated Aug. 30, 2021

---

**Sinclair, Ruth D :LSH Diagnostic Imaging**

| | |
|---|---|
| **From:** | Sinclair, Ruth D :LSH Diagnostic Imaging |
| **Sent:** | Monday, August 23, 2021 8:05 PM |
| **To:** | COVID19 |
| **Subject:** | Legacy Exemption Request |
| **Attachments:** | COVID EX.jpeg; COVID LETTER.tiff |

To Whom it may concern,

See attached - If you have questions please contact me, 503 385 6864.

Ruth Sinclair

OFFICE OF THE DIRECTOR
Office of the State Public Health Director



# COVID-19 Vaccine Medical Exception Request Form

I am requesting an exception from the COVID-19 vaccination requirement on the basis of a diagnosed physical or mental condition that limits my ability to receive the COVID-19 vaccination, as certified by my medical provider below.

| Individual's name: Ruth Sinclair | Date of birth: 11/17/86 |
|---|---|
| Phone number: 503-385-6864 | |
| Signature: Ruth Sinclair | Date: 8/30/2021 |
| Employer/Organization: Legacy Silverton Medical Center | Job Title/Position: Ultrasound |

Please note that if your exception request is approved, you may be required by your employer or other responsible party to take additional steps to protect you and others from contracting and spreading COVID-19. Workplaces are not required to provide this exception accommodation if doing so would pose a direct threat to the excepted individual or others in the workplace or would create an undue hardship.

## Statement from Medical Provider

Your patient, named above, has requested an exception to the COVID-19 vaccination requirement due to a medical condition. Please provide the information below.

## Please check an option below and complete related questions:

☑ The patient should not receive the COVID-19 vaccination due to a medical condition.

What is the medical condition that prevents them from receiving the COVID-19 vaccination?

☑ Yes ☐ No   Is the medical condition permanent?

☐ Yes ☐ No   Is the medical condition temporary? If yes, what is the expected duration?

Please describe how this medical condition impacts their ability to receive the COVID-19 vaccination. Patient has documented anaphylaxis to the Tdap and is presumed to have a PEG allergy. Therefore would not recommend covid vaccine.

OHA 3870 (8/25/2021)

☐ The patient may not receive a certain type of COVID-19 vaccination. The patient may receive a vaccination manufactured by _____ .

☐ The patient may receive a COVID-19 vaccination.

I certify the above information to be true and accurate.

| Printed name of medical provider: Eva McCarthy | Date: 8/31/2021 |
|---|---|
| Signature of medical provider: *(signature)* | Work address: 114 SE Church St, Sublimity OR 97385 |
| | Work telephone number: 503-769-2259 |

**Document accessibility:** For individuals with disabilities or individuals who speak a language other than English, OHA can provide information in alternate formats such as translations, large print, or braille. Contact the Health Information Center at 1-971-673- 2411, 711 TTY or COVID19.LanguageAccess@dhsoha.state.or.us.

OHA 3870 (8/25/2021)

## Sinclair, Ruth D :LSH Diagnostic Imaging

**From:** COVID19
**Sent:** Wednesday, September 08, 2021 3:54 PM
**Subject:** Exemption Receipt Confirmation

This is a notification that we have received your request for an exception to the COVID vaccine mandates based on a medical condition or sincerely held religious belief. The exception team is working on reviewing these requests now and we encourage you to closely monitor this email over the coming weeks.

We might need additional information and, if so, will make any follow-up requests to the email address you have provided. We will also be communicating decisions to this email as well. We do not have a firm date yet on when your request will be decided but please know that the team is working diligently and we will communicate decisions as they are made.

Thank you,

COVID19 Hotline

*For more information about COVID19 vaccinations and requirements visit the intranet page COVID-19 vaccines - MyLegacy Intranet (lhs.org)*

1

# EXHIBIT "C"

## Sinclair, Ruth D :LSH Diagnostic Imaging

| | |
|---|---|
| **From:** | Legacy Covid Vaccine |
| **Sent:** | Thursday, September 23, 2021 5:42 AM |
| **To:** | Sinclair, Ruth D :LSH Diagnostic Imaging |
| **Subject:** | COVID-19 Exception Request |
| **Attachments:** | CDC vaccine guidancesummary-interim-clinical-considerations.pdf |

Hello,

Thank you for submitting your medical exception request for the COVID-19 Vaccine Policy. The Vaccine Exception Workgroup included a variety of medical experts who thoroughly reviewed each request. To protect your privacy and confidentiality, both your name and the name of your provider were removed from the request form before it was reviewed.

Your request has been denied by the Vaccine Exception Workgroup. In evaluating each medical exception request, the Workgroup used CDC guidelines making this decision. Those guidelines include two specific medical reasons not to get the COVID-19 vaccine: an allergic reaction to the first dose of one of the COVID vaccines or an allergy to a specific component in the COVID vaccines (see attached CDC guidelines). Your medical condition does not disqualify you from getting the vaccine.

Since your exception request is denied, you have three options:

- Take action to keep your job by starting your vaccines now and finish as soon as possible
- Take no action and you will lose your job on or about Oct. 19
- Quit your job by resigning from your position

This may be disappointing news. No details from the exception reviews will be shared with leaders or others.

**Vaccine Exception Workgroup**

# EXHIBIT "D"

## Sinclair, Ruth D :LSH Diagnostic Imaging

| | |
|---|---|
| **From:** | Sinclair, Ruth D :LSH Diagnostic Imaging |
| **Sent:** | Tuesday, September 28, 2021 2:53 PM |
| **To:** | COVID19 |
| **Cc:** | cute_ruthie2002@yahoo.com |
| **Subject:** | Attention to: Exemption Review Panel |
| **Attachments:** | Image (8).tif |

Please see attached documentation for my appeal.
Reach out to me if any additional documentation is needed in order to make an informed decision.
I will also need responses sent: cute_ruthie2002@yahoo.com

Please respond to: cute_ruthie2002@yahoo.com

Thanks
Ruth Sinclair BS RDMS(AB, BR, OB/GYN), RVT (VT)
Legacy Silverton Medical Center
Cute_ruthie2002@yahoo.com
503 385 6864

1

Legacy Silverton Medical Center

9/26/2021

To Whom it Macy Concern,

Thank you for looking over my medical exemption for the COVID vaccine. This letter I submit today is my appeal letter for a secondary review, as stated in Legacy Health FAQs dated Aug. 17, 2021. In evaluating my medical denial letter there is no detailed explanation by your workgroup as to why I was denied. As stated by my provider I have a documented anaphylaxis to a component within the COVID vaccine. I have had an immediate allergic reaction to an ingredient within the COVID vaccine. This IS a contraindication according to the CDC guidelines.

Since my last exemption submission in just over a month the vaccine policies and procedures have changed substantially and appear to continue to evolve with time. As indicated on previous documentations I will use this secondary review and appeal process to attach my religious exemption at this time. Please see attached documentation as part of my appeal process.

This process appears to be very convoluted, and I appreciate this workgroup for taking the time to look over my case diligently.

Sincerely,

Ruth Sinclair   9/26/2021

Ruth Sinclair, BS, RDMS (AB) (BR) (OB/GYN), RVT (VT)
Legacy Silverton Medical Center
Employee# 46704
Email:cute_ruthie2002@yahoo.com
Ph: 503-385-6864

See attached
4 additional
pages.

Ruth Sinclair, BS, RDMS (AB) (BR) (OB/GYN), RVT (VT)
Registered Diagnostic Medical Sonographer/Registered Vascular Technologist
Legacy Silverton Medical Center
Employee# 46704
Email:cute_ruthie2002@yahoo.com
Ph: 503-385-6864

9/26/2021

To: Legacy Silverton Medical Center
342 Fairview St. Silverton, OR 97381

To Whom it May Concern,

I am seeking a religious exemption from the Covid vaccination requirement imposed by
Governor Kate Brown and/or Legacy Health based upon my sincerely held religious beliefs.

I request this exemption and accommodation under:

~The Free Exercise Clause for the First Amendment to the United States Constitution
~The Americans with Disabilities Act (ADA)
~The Civil Rights Act of 1964
~The Oregon Revised Statute Volume 12 – Title 36 – Chapter 433 – Section 433.416 (ORS
433.416) and
~The Religious Freedom Restoration Act of 1993.

Some biblical commands (King James Version) that pertain to my sincerely held religious beliefs
are:

1. My body is the Temple of the Holy Spirit and I am obligated to protect if from
   defilement. For example:
   a. I Corinthians 3:16-17 states, "Know ye not that ye are the temple of God, and that
      the Spirit of God dwelleth in you? If any man defile the temple of God, him shall
      God destroy; for the temple of God is holy, which temple ye are."
   b. I Corinthians 6:19-20 informs, "What! Know ye not that your body is the temple
      of the Holy Ghost which is in you, which ye have of God, and ye are not your
      own? For ye are bought with a price: therefore glorify God in your body, and in
      your spirit, which are God's."
   c. Acts 17:24 goes to explain I am the Temple of the Holy Spirit and not a temple
      made by man. "God that made the world and all things therein, seeing that he is
      Lord of heaven and earth, dwelleth not in temples made with hands."
2. Life begins at conception and a conscious termination of a human life is equivalent to
   murder. The bible instructs me not to partake (directly or indirectly) in this act. My
   longstanding anti-abortion beliefs conflict with any requirement to inject a vaccine that
   utilizes any stage of aborted-derived cells for any portion of the

manufacturing/development/confirmation or production process including the testing phases.

    a. Exodus 20:13. The word of God instructs, "Thou shalt not kill."
    b. Deuteronomy 5:17 Again states, "Thou shalt not kill."
    c. Psalms 139:13-14. "…thou hast covered me in my mother's womb. I will praise thee; for I am fearfully and wonderfully made: marvelous are thy works; and that my soul knoweth right well."
    d. Jeremiah 1:4-5, "Then the word of the Lord came unto me, saying, before I formed thee in the belly I knew thee; and before thou camest forth out of the womb I sanctified thee, and I ordained thee a prophet unto the nations."

3. The body is the temple of the Holy Spirit and I am bound by scripture to follow suit of God when placing/putting things into it.

    a. St. Mark 12:17. "And Jesus answering said unto them, Render to Caesar the things that are Caesar's, and to God the things that are God's. And they marveled at him."

I must protect my body; the Temple of the Holy Spirit from defilement according to God's law, who is above all other. To knowingly inject an aborted-tainted medical product into my body directly conflicts with my longstanding sincerely held religious beliefs and practices. All Covid vaccines utilize abortion-derived cell lines in either the development, testing, confirmation, production or manufacturing phase.

I am invoking my religious right to currently decline medical products and/or vaccines which knowingly use abortion-derived cell lines at any stage of establishing. The Covid-19 vaccines also contain components that are proven or potentially damaging to the human body. To administer such a vaccine is a contradiction with my religious and medical obligations to protect my body.

I have currently been instructed by my medical provider not to receive the Covid vaccine due to previous immediate reactions to a component within the vaccine. I fall under a contraindication for the CDC to not receive this vaccine, however due to a denial from your board I am appealing the process and including my religious exemption to support my stance.

No available Covid vaccine currently produces sterilizing immunity. Therefore, vaccinated individuals can, and will still spread Covid. Failure to accommodate my request for exemption and accommodations serves no justifiable purpose. Healthcare facilities have been operating without a vaccine mandate throughout this entire pandemic. Healthcare organizations have the proper tools and supplies and are able to honor reasonable accommodation requests. I hope you consider this religious exemption while reflecting back upon my medical exemption previously submitted. Failure to uphold my religious exemption would prevent me to exercise my sincerely held religious beliefs as a condition of employment.

I have been and will continue to adhere to all reasonable accommodations to meet Legacy Health's safety protocols related to Covid-19. I respectfully appreciate an exemption

regardless if it's deemed a medical exemption or by my sincerely held religious beliefs, practices, and observance. Please reach out to me by one of the following contacts listed above for additional information.

Sincerely,

*Ruth Sinclair* 9/26/2021

Ruth Sinclair, BS, RDMS (AB) (BR) (OB/GYN), RVT (VT)

OFFICE OF THE DIRECTOR
Office of the State Public Health Director



# COVID-19 Vaccine Religious Exception Request Form

**Instructions:** Please refer to the Instructions for filling out the COVID-19 Religious Exception Request Form. If you are requesting an exception from the COVID-19 vaccination requirement for religious reasons you must fill out this form and **submit it to your employer or other responsible person**.

### DO NOT SEND THIS FORM TO THE OREGON HEALTH AUTHORITY.

I am requesting an exception from the COVID-19 vaccination on the basis of a sincerely held religious belief.

| Individual's name: Ruth Sinclair | Date of birth: 11/17/1986 |
|---|---|
| Phone number: 503-385-6864 | |
| Employer/Organization: Legacy Silverton Medical Center | Job Title/Position: Sonographer |

## Please check the boxes below as appropriate and complete related questions:

[X] Receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.

Please describe your religious belief and how it affects your ability to receive a COVID-19 vaccination

I certify the above information to be true and accurate and that I sincerely hold the religious beliefs described above.

| Signature: Ruth Sinclair | Date: 9/26/2021 |
|---|---|

Please note that if your exception request is approved, you may be required by your employer or other responsible party to take additional steps to protect you and others from contracting and spreading COVID-19. Workplaces are not required to provide this exception accommodation if doing so would pose a direct threat to the excepted individual or others in the workplace or would create an undue hardship.

**Document accessibility:** For individuals with disabilities or individuals who speak a language other than English, OHA can provide information in alternate formats such as translations, large print, or braille. Contact the Health Information Center at 1-971-673- 2411, 711 TTY or COVID19.LanguageAccess@dhsoha.state.or.us.

OHA 3871 (9/01/2021)

# EXHIBIT "E"

**Legacy Health**

# Top COVID-19 vaccine safety questions

Updated September 22, 2021

- Can I trust the vaccine approval process?
- Is the vaccine safe?
- Is the vaccine safe for pregnancy?
- Is the vaccine safe if I have an autoimmune disorder?
- Do I still need the vaccine if I have had COVID-19? What about natural immunity?
- Why should I get the vaccine if people who got the vaccine are still getting sick?
- What is the difference between the Pfizer, Moderna, and Johnson & Johnson (J&J) vaccines?
- How does mRNA affect my body?
- What about long term side effects?
- How is the FDA-approved Pfizer vaccine different than the EUA-approved Pfizer vaccine? What is Comirnaty?
- Do the vaccines include fetal cells?
- What if I or someone I live with recently got sick with COVID-19? When do I get my vaccine?

## Can I trust the vaccine approval process?

- Yes. Clinical studies can take a long time because it usually takes a long time to find enough volunteers and people who have the disease. We did not have that problem with COVID-19.

- Researchers were able to make the clinical trial process more efficient while keeping safety a top priority.

- Reference: Unwavering Regulatory Safeguards for COVID-19 Vaccines | Vaccination | JAMA | JAMA Network



**LEGACY**
H E A L T H

**Exhibit 1**



## Do the vaccines include fetal cells?

- No. The vaccines do not include any fetal cells.

- Pfizer and Moderna used fetal cells when researching the vaccines to see if the vaccines would work. Johnson & Johnson use fetal cells to prepare the vaccine, but it is purified and all fetal cells are removed from the vaccine before you get it.

- Fetal cells that are used are not from recent abortions. They come from fetal cells from the 1970s and 1980s.

- References: COVID-19 Vaccines & Fetal Cell Lines and COVID-19 Vaccines and Fetal Cells (Michigan DHHS)

## What if I or someone I live with recently got sick with COVID-19? When do I get my vaccine?

- If you had COVID-19, you can get the vaccine as soon as you are done with isolation. This is when you do not have symptoms anymore and it has been at least 10 days since your symptoms first started. Check with your doctor if you go to the hospital or if you are immunocompromised.

- If you are exposed to someone with COVID-19, you can get the vaccine as soon as you are done with quarantine. This means after 14 days without any symptoms or sooner if you got a negative COVID-19 test.

- If you got a COVID monoclonal antibody treatment (casirivimab/imdevimab, sotrovimab, or bamlanivimab/etesevimab), you should wait 90 days before you get the vaccine.

- References: When to Get the Covid Vaccine After Having Covid – Cleveland Clinic and Frequently Asked Questions about COVID-19 Vaccination | CDC and COVID-19 Quarantine and Isolation | CDC

**Exhibit 1**

# EXHIBIT "F"

From: **Legacy Covid Vaccine** LegacyCovidVaccine@lhs.org
Subject: Appeal Exception Request Decision
Date: Oct 13, 2021 at 2:41:12 PM
To: Ruth Silbernagel cute_ruthie2002@yahoo.com

Dear Ruth,

Thank you for submitting your appeals to your vaccine exception request denial.  As we
indicated, Legacy reviewed appeals to ensure the vaccine work group's  process was followed
properly. In your  case, we can confirm that all steps in the exception review process were
followed and the denial of your exception requests stands.

Your options remain the same at this time: receive the vaccine (you must begin the vaccine
series or receive the single shot J&J vaccine by October 18 to remain employed), resign your
position or remain on unpaid leave until October 18, with administrative termination to follow
on October 19. We understand you may be frustrated with the decision on your exception
request, however, this is the final decision on this matter. There is no more information that will
be forthcoming through this process.

Regards,
COVID19 Vaccine Exception Workgroup



**LEGACY**
H E A L T H

Legacy Health
1919 N.W. Lovejoy St.
Portland, OR 97209



October 20, 2021

Dear Ruth,

**This letter is to advise you that our records show that you have not received or started a COVID-19 vaccine series by the October 18, 2021, deadline. Because of this, your employment was administratively terminated effective on October 19, 2021, for failure to comply with the COVID-19 Vaccine Policy. If you started (or completed) your vaccine series before Oct 18, please email a picture of your vaccine card to employeehealth@lhs.org immediately so that we can update our records and reinstate your employment.** Once verified, we will place you back on unpaid administrative leave and contact you regarding next steps for compliance and return to work.

My previous letters to you in August and September provided notice of Legacy's new COVID-19 vaccine requirement and the corresponding state mandates. These communications stated that all Legacy Health employees were required to complete their vaccine series by Sept. 30, 2021. Employees were notified that if not compliant by this date, they would be placed on Unpaid Administrative Leave starting October 1, pending eventual separation from employment.

**Your final paycheck for all hours owed to you through October 19, including a cash out of your accrued and unused APL, was paid as a direct deposit on October 20 with your paystub mailed separately. For those without direct deposit a check was placed in the mail on October 20. Employees enrolled in medical, dental, vision and flexible spending accounts through Legacy will continue to be covered until October 31, 2021.** Thereafter, employees may continue coverage via COBRA enrollment. Information will be sent to you by PacificSource about how to elect continuation through COBRA.

If you have personal belongings to collect or Legacy property to turn in, please contact your manager to make arrangements. Legacy property includes items such as badge, keys, laptop or desktop computer, furniture, issued scrubs or Legacy materials or documents.

We know that this has been a stressful time with difficult choices to make. We respect that you needed to make the best decision for yourself. We want to express that we appreciate your past service to Legacy and wish you well.

Sincerely,

*Sonja Steves*

Sonja Steves, MBA, SPHR, SHRM-SCP
Senior Vice President and Chief Human Resources Officer

# EXHIBIT "G"



**CHRISTINA E. STEPHENSON**
Labor Commissioner

July 12, 2023

RUTH SINCLAIR
7132 PETER RD SE
AUMSVILLE, OR 97325

RE:  Complainant: Ruth Sinclair
     Respondent: Silverton Health Dba Legacy Silverton Health
     Case #:     EEEMRG220712-91036
     EEOC #:     38D-2022-00667

## NOTICE OF RIGHT TO FILE A CIVIL SUIT

This is your 90-day notice letter. Pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. *Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation.</u>*

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

The Bureau may determine at a future date to terminate proceedings without initiating a contested case hearing. You have the choice at this time of pursuing the complaint in state circuit court or continuing with the Bureau's process. The Bureau requests that you notify the Division if this complaint is taken to court.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing**: July 12, 2023

Enclosure(s)
cc:   Silverton Health Dba Legacy Silverton Health, Respondent
      Sophie Shaddy-Farnsworth, Respondent's Attorney
      Silverton Health, Registrant
      Jonathan Avery, Registered Agent

 Portland · Salem · Eugene       oregon.gov/boli
Help@boli.oregon.gov       971-245-3844
Ore. Relay TTY: 711      



**CHRISTINA E. STEPHENSON**
Labor Commissioner

July 12, 2023

RUTH SINCLAIR
7132 PETER RD SE
AUMSVILLE, OR 97325

RE:   Complainant:   Ruth Sinclair
      Respondent:    Silverton Health Dba Legacy Silverton Health
      Case #:        EEEMRG220712-91036
      EEOC #:        38D-2022-00667

The Civil Rights Division has concluded the investigation and review of the above-cited case and has determined that there is substantial evidence to support the allegations of discrimination.

The complaint was dually filed under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act (ADEA), or the Americans with Disabilities Act (ADA), which are enforced by the U.S. Equal Employment Opportunity Commission (EEOC).

The Division may refer this matter to the Administrative Prosecution Unit for contested case hearing consideration and may facilitate an attempt to reach a reasonable settlement of this matter. Please see the enclosure with information on the conciliation process; however, no action is required from you at this time.

Complainant has the right to withdraw this case at any time. Please see ORS 659A.875 regarding the time limitations that apply to any right the Complainant may have to file a civil action in circuit court.

NOTE: Pursuant to ORS 192.501(8), the Bureau cannot release a copy of the file until it is closed.  The above case is not yet closed.  Please take note of any enclosures sent with this letter.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

Enclosure(s)

  

## Civil Rights Division - Bureau of Labor and Industries
# NOTICE OF SUBSTANTIAL EVIDENCE DETERMINATION

Complainant: Ruth Sinclair

Respondent:   Silverton Health Dba Legacy Silverton Health

Case Number: EEEMRG220712-91036

Investigator:   Michael Mohr

Filing Date:    July 12, 2022

DATE ISSUED

JUL 1 2 2023

CIVIL RIGHTS DIVISION

Reviewed By: _____ Theodore E. Wenk

### I.    Jurisdiction

Oregon Revised Statutes chapters 659A, ORS 25.337, 25.424, 171.120, 345.240, 441.184, 476.576, 651.060, 651.120, 652.355, 653.060 and 654.062, and Oregon Administrative Rules chapter 839 divisions 2, 3, 4, 5, 6, 9 and 10 authorize the Civil Rights Division to accept, investigate, amend, resolve and determine complaints alleging unlawful practices in employment, housing, places of public accommodation, state government and career, professional and trade schools.

Specific facts supporting a conclusion that the Division has jurisdiction over Respondent(s) are found below.

### II.    Synopsis

The Bureau of Labor and Industries, Civil Rights Division, finds substantial evidence of an unlawful practice based on disability in that Respondent terminated Complainant without engaging in an adequate interactive process when she informed them that she was unable to safely be vaccinated and supported her inability to be vaccinated with medical documentation.

### III.    Claim and Answer

On July 12, 2022 Complainant filed a complaint with the Civil Rights Division alleging an unlawful employment practice based on disability and religion in that her vaccine exemption request was denied and Complainant was terminated without any further interactive process. Complainant alleges this constitutes a violation of ORS 659A.112 and ORS 659A.030.

Respondent indicated that no additional interactive process was required because it denied her vaccine exemption based on CDC guidance.

«CASENUMBER»

## Civil Rights Division - Bureau of Labor and Industries
# NOTICE OF SUBSTANTIAL EVIDENCE DETERMINATION

### IV.    Identity of Respondent(s)

1. Respondent Silverton Health dba Legacy Silverton Health is a Public Benefit and is a person pursuant to ORS 659A.001(9).

### V.    Findings of Fact

1. Respondent Silverton Health dba Legacy Silverton Health employs one or more persons in the State of Oregon and is an employer pursuant to ORS 659A.001(4)(a).

2. At all times material to this complaint, Respondent employed 50 or more people and is a covered employer under ORS 659A.108, 659A.112, and 659A.118.

3. Complainant was hired as an Ultrasound Technician by Respondent on April 25, 2016.   In the summer of 2021, in order to comply with state and federal regulations for healthcare providers, Respondent adopted a policy that required employees to be vaccinated or receive a medical or religious exemption by September 30, 2021.  Complainant applied for a medical exception request to Respondent.  She provided a doctor's note indicating that her doctor was fairly certain that she was allergic to a preservative contained in all available COVID-19 vaccinations in 2021.   Complainant later raised a religious objection to the vaccine on September 26, 2021, which was also denied.   Complainant's employment was terminated by Respondent on or around October 19, 2021.

4. Complainant provided the following evidence in support of their allegations:

   a) A 9/22/2021 email from a radiology team member, Courtney Teigen, indicating that scheduling would be uncertain while compliance with state and federal vaccine mandates took effect.

   b) An August 4, 2021, email from Respondent's Vice President Seth Podolsky announcing Respondent's COVID-19 vaccination policy.

   c) A copy of Complainant's initial submission applying for a medical exception to Respondent's vaccination policy.  The submission included an August 13, 2021, doctor's note indicating that Complainant had a suspected allergy to a component of all available COVID-19 vaccines and was at risk of anaphylaxis if she took it.

   d) A copy of Complainant's September 26, 2021, appeal of her denial of request for medical exception to Respondent's vaccination policy.  The appeal also includes a request for religious exception.

   e) An October 20, 2021, termination letter indicating that Complainant was terminated from her employment for not receiving a COVID-19 vaccine.

Civil Rights Division - Bureau of Labor and Industries
# NOTICE OF SUBSTANTIAL EVIDENCE DETERMINATION

5. Respondent submitted a written position statement in answer to this complaint. Respondent indicated that it was not required to provide any additional interactive process to complainant under Oregon disability accommodation laws after it denied her initial request for a vaccine exception. Respondent argues that this denial and lack of further accommodation was justified because Complainant's allergy to a preservative in the COVID-19 vaccines was only "suspected" and therefore not a CDC approved contraindication. Respondent also argues that Complainant's religious accommodation request was not supported by specific beliefs and also could not be accommodated without a direct threat to patients and staff, or without expending more than a de minimis amount of resources (i.e. an "undue hardship" under religious accommodation laws.)

6. Respondent offered the following documentation in support of Respondent's defense(s):
    a) An August 26, 2021, updated announcement of Respondent's COVID-19 vaccine policy and information resources;
    b) A copy of Respondent's August 2021 dated COVID-19 vaccination policy;
    c) A copy of Complainant's August 22, 2021, request for medical exception, including a doctor's note describing her risk of anaphylaxis if she takes a COVID-19 vaccine;
    d) An email from Respondent to Complainant dated September 23, 2021, denying Complainant's medical exception request.
    e) A copy of Complainant's September 26, 2021, request for appeal of denial of medical exception and initial request for religious exception from Respondent's COVID-19 vaccination policy.

7. On June 14, 2023, BOLI requested that Respondent provide any additional documentation of its interactive process with Complainant that was not already provided. Respondent indicated that no additional documentation or evidence exists that had not been already provided.

## VI.  Summary

Complainant provided a doctor's note indicating that her primary care physician believed that he highly suspected that a preservative present in two other vaccines had caused allergic reactions in Complainant. This preservative was present in all available COVID-19 vaccines in 2021. Respondent relies on a chart issued by the CDC to defend its denial of any accommodation to Complainant. (https://www.cdc.gov/vaccines/covid-19/clinical-considerations/interim-considerations-us.html#contraindications)   Here,   Complainant provided her own doctor's opinion that she was probably allergic to an ingredient found in COVID-19 vaccines, and the effect of vaccination could be life-threatening anaphylaxis. Respondent could have requested additional testing or medical verification

«CASENUMBER»

## Civil Rights Division - Bureau of Labor and Industries
# NOTICE OF SUBSTANTIAL EVIDENCE DETERMINATION

to determine more certainly that Complainant was allergic to the preservative found in the COVID-19 vaccines, even under the CDC guidance Respondent relied on. In addition, Respondent is required to provide ADA accommodation so long as it does not interfere with CDC requirements. Respondent was given the opportunity to explain how it had determined through the interactive process that no accommodation could be made to Complainant without undue hardship to Respondent, but failed to provide any evidence that it had exhausted the interactive process. Respondent did not appear to engage in any interactive process with Complainant outside of considering her medical exemption request.

Even if Complainant could not be accommodated in her old position, there does not appear to have been any attempt by Respondent to determine if alternate work from home positions were available or if any other accommodations existed that could satisfy the needs of Respondent and Complainant. That accommodation conversation, and the options employers and employees come up with during that conversation, is the core purpose of the interactive process.

Because Respondent failed to demonstrate that it engaged in any truly personalized interactive process regarding Complainant's disability accommodations, it is liable for terminating her employment without attempting that process, especially because there are easily conceivable accommodations that Respondent failed to even look into; failure of Respondent to engage an interactive process violates ORS 659A.112 (OAR 839-006-0206(6)).

Complainant worked as an ultrasound technician. Thus, she could not continue in her position with Respondent unvaccinated without creating a direct threat of increased risk of contracting coronavirus for patients and staff. Unlike with disability accommodations, accommodation for religion requires only a "de minimis" expenditure of resources before accommodation is considered an "undue burden" to the employer. Here, any attempt to move Complainant to a remote position would have required more than a de minimis expenditure of resources. Therefore, Respondent did not violate ORS 659A.030 or discriminate against Complainant based on her religion when it terminated her employment for not receiving a COVID-19 vaccination.

### VII.    Determination

The Bureau of Labor and Industries, Civil Rights Division, finds SUBSTANTIAL EVIDENCE OF AN UNLAWFUL EMPLOYMENT PRACTICE in that Respondent failed to engage in an interactive process and terminated Complainant's employment due to disability in violation of ORS 659A.112.

/s MICHAEL MOHR
Michael Mohr Senior Investigator
Civil Rights Division

# INFORMATION FOR COMPLAINANTS RECEIVING A DETERMINATION OF SUBSTANTIAL EVIDENCE OF AN UNLAWFUL PRACTICE OR UNLAWFUL EMPLOYMENT PRACTICE

## The Conciliation Process

The investigation of this case has resulted in a determination of substantial evidence that an unlawful practice or unlawful employment practice occurred. The division may facilitate settlement negotiations between the Complainant and the Respondent, refer the matter directly to a contested case hearing, or administratively close the case

The Complainant and Respondent have the right to decline to enter into settlement negotiation or to reject any settlement offer made. However, if Complainant declines or otherwise fails to participate in the conciliation process, or rejects a settlement offer made by Respondent that the division considers to provide full remedy, the case may be administratively closed.

*Complainant has the right to withdraw the complaint from the division at any time and pursue the matter by filing a civil action in circuit court, subject to statutory deadlines set forth in ORS 659A.875.*

BOLI-facilitated **conciliation agreements** are voluntary, no-fault settlements. Conciliation agreements may provide for remedies to a complainant including but not limited to monetary payment for lost wages and pain and suffering, as well as employment or reinstatement of employment.

If Complainant and Respondent agree to settle the case, the division prepares a **conciliation agreement** for Complainant, Respondent and the division to sign. When the **conciliation agreement** is signed by all parties, the case is closed. If Complainant settles the case, Complainant does not have the right to file a civil suit in court on the same issues.

## Complainant's Options if Conciliation Fails

1. If conciliation fails, a division supervisor reviews the case to determine whether it is appropriate for a contested case hearing in BOLI's Administrative Prosecution Unit. If it is not, the division will inform Complainant and close the file. If a notice of Complainant's right to file a civil action in circuit court has not previously been issued, it will be issued at the time of case closure.

2. If the division determines the case is appropriate for a contested case hearing, it is forwarded to the Administrative Prosecution Unit, where an administrative prosecutor reviews the case to determine if it is likely to prevail in a hearing. If the prosecutor finds it is not likely to prevail in a hearing, the prosecutor will so inform Complainant and close the file. If a notice of Complainant's right to file a civil action in circuit court has not previously been issued, it will be issued at the time of case closure.

3. If the administrative prosecutor determines that the case is likely to prevail in a hearing, the prosecutor will so inform Complainant and will serve "specific charges" on Respondent. The prosecutor will represent the case in a contested case hearing. Complainants do not need an attorney to participate in a contested case hearing.

If wishing to consult with an attorney, you may contact the Oregon State Bar's Lawyer Referral Service at 503-684-3763 (Portland) or 800-452-7636. The Bureau is not permitted to make referrals to attorneys.



**CHRISTINA E. STEPHENSON**
Commissioner of the
Bureau of Labor and Industries

July 12, 2023

RUTH SINCLAIR
7132 PETER RD SE
AUMSVILLE, OR 97325

RE:   Complainant: Ruth Sinclair
      Respondent: Silverton Health Dba Legacy Silverton Health
      Case #:    EEEMRG220712-91036

## IMPORTANT NOTICE REGARDING YOUR CASE

Dear Complainant,

This letter is to inform you about the status of your complaint with the Administrative Prosecution Unit, the unit within BOLI that prosecutes cases for the Civil Rights and Wage and Hour Divisions. **Please note that though we have found substantial evidence of discrimination in your case, we have NOT yet determined whether we will prosecute your case.**

There are a few possibilities for what will happen with your case now.  In any of the scenarios described below, **if you wish to file a civil suit in court you must do so within the 90-day timeline described in the enclosed notice**.  This will be your only chance to file a civil suit in court, and if you miss the 90-day deadline, you will lose your right to file.

**Scenario 1**: BOLI will take no further action in your case, and you must file in court within 90 days, as described in the enclosed notice, if you wish to continue pursuing your claims.

**Scenario 2**: BOLI will attempt to resolve your case through conciliation.  Conciliation is an attempt to resolve your case informally, without further legal action or administrative prosecution.  However, engaging in conciliation does NOT stop any time limitations from running.  If you want to file a civil suit, you must do so within the 90-day timeline described in the enclosed notice, *even if* you are engaging in conciliation.  Please note that both parties – the complainant and the respondent – must agree to engage in conciliation.  If both parties agree, the prosecutor will relay settlement offers between the parties and draw up settlement paperwork if the parties can agree to the terms of the settlement.  The Agency resolves between 30% and 40% of cases like yours through conciliation.

**Scenario 3**: If conciliation is unsuccessful or if either of the parties does not agree to engage in conciliation, a different Administrative Prosecutor will be assigned to your

  

case to review your file and decide whether to prosecute your case. The review period does not stop the 90-day timeline from running. It is important to understand that the Administrative Prosecution Unit takes less than 10% of referred cases to a hearing. Frequently, the decision by APU about whether to prosecute your case is made AFTER the 90 days has run, meaning if you wait for the APU decision, you will likely lose your right to file a lawsuit. If you want to file a civil suit, you must do so within the 90-day timeline described in the enclosed notice, *even if* you are waiting for APU's decision.

We cannot tell you at this point which option your case falls into. Again, if you would like to file a civil suit alleging the same matters that are the basis of your complaint, you **must** file in court within the 90-day timeline described in the enclosed notice.

If you have filed in court, we are required to close your BOLI complaint. Please notify us if you have done so by email at rachel.diamond-cuneo@boli.oregon.gov, by phone at 971-358-3905 or by mail at Administrative Prosecution Unit, 800 NE Oregon St., Suite 1045, Portland, Oregon 97232.

To request a copy of your file, you can go online to www.oregon.gov/boli/publicrecords and fill in the online form or contact public.records@boli.oregon.gov.

Please be aware that we cannot provide you with legal advice. If you would like legal advice regarding case deadlines, statutes of limitations, or otherwise, you can search online for an employment attorney, or you may call the Oregon State Bar Attorney Referral Service at 503-684-3763 or 1-800-452-7636 to contact an attorney. If you are considering filing a complaint in court, you have only 90 days to find an attorney and have them file a complaint for you.

Thank you for your attention to this matter. Please do not hesitate to contact us if you have any questions by email at rachel.diamond-cuneo@boli.oregon.gov, by phone at 971-358-3905.

Enclosure: Civil Suit Notice

# EXHIBIT "H"

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

**Count Days**    **Add Days**    **Workdays**    **Add Workdays**    **Weekday**    **Week №**

Advertising

From **Wednesday, July 12, 2023**
Added 90 days

## Result: Tuesday, October 10, 2023

### Calendar showing period from July 12, 2023 to October 10, 2023

| July 2023 | | | | | August 2023 | | | | | September 2023 | | | | | October 2023 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 19 days added | | | | | 31 days added | | | | | 30 days added | | | | | 10 days added | | | | | | |
| Sun | Mon | Tue | Wed | T | Sun | Mon | Tue | Wed | T | Sun | Mon | Tue | Wed | T | Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | | | | 1 | 2 | | | | | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 2 | 3 | 4 | 5 | 6 | 6 | 7 | 8 | 9 | 1 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 9 | 10 | 11 | 12 | 1 | 13 | 14 | 15 | 16 | 1 | 10 | 11 | 12 | 13 | 1 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 16 | 17 | 18 | 19 | 2 | 20 | 21 | 22 | 23 | 2 | 17 | 18 | 19 | 20 | 2 | 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 23 | 24 | 25 | 26 | 2 | 27 | 28 | 29 | 30 | 3 | 24 | 25 | 26 | 27 | 2 | 29 | 30 | 31 | | | | |
| 30 | 31 | | | | | | | | | | | | | | | | | | | | |

☐ = Start date (Jul 12, 2023)   ☐ = Final result date (Oct 10, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.



© Time and Date AS 1995–2023